UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CARY LEE STOKES,

        Petitioner,            Civil No. 2:13-CV-13593
                                        HONORABLE GEORGE CARAM STEEH
      v.                         UNITED STATES DISTRICT JUDGE

JEFFREY WOODS,

        Respondent.
_____/

## OPINION AND ORDER DISMISSING THE PETITION FOR WRIT OF HABEAS CORPUS AND DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY OR LEAVE TO APPEAL *IN FORMA PAUPERIS*

Cary Lee Stokes, ("Petitioner"), confined at the Central Michigan Correctional Facility in St. Louis, Michigan, filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. In his application, filed *pro se*, petitioner challenges his convictions for felonious assault, M.C.L.A. 750.82; possession of a firearm in the commission of a felony, M.C.L.A. 750.227b; felon in possession of a firearm, M.C.L.A. 750.224f; possession of a short barreled shotgun, M.C.L.A. 750.224b; and being a third felony habitual offender, M.C.L.A. 769.11. For the reasons that follow, the petition for writ of habeas corpus is DENIED.

### I. Background

Petitioner was convicted following a jury trial in the Saginaw County Circuit Court. Petitioner represented himself at trial with the presence of standby counsel.

Petitioner dated the victim Sue Vargas for almost five years. Vargas ended the

-1-

relationship, which angered petitioner.  On May 14, 2010, Vargas was on her way home to pick up her new boyfriend, Don Spicer, who was at home with her eleven-year old son.  When Vargas called Spicer's cell phone, petitioner answered the phone.  Vargas arrived at home a short time later and ran inside, where she found petitioner in her kitchen.  Petitioner grabbed Vargas and threw her into the adjoining bedroom, next to Spicer, stating: "Bitch, get your ass in there."  Petitioner pointed a sawed-off shotgun at both her and Spicer.  Spicer grabbed for the gun and the two men struggled on the floor.  The gun discharged during the struggle between the two men, blowing a hole in through an Igloo cooler and the bathroom wall.

Vargas ran out of the bedroom to look for her son.  Vargas called the police. Petitioner and Spicer left the house before the police arrived.  Vargas never saw Spicer again.  After the police arrived, Vargas took her children and went to live at her sister's house for a few days. When Vargas returned home, she discovered petitioner's shotgun lying in her back yard, hidden by the tall grass, and turned it in to the police.

Petitioner's conviction was affirmed on appeal, although the case was remanded to the trial judge for clarification regarding whether the judge was aware that he had discretion to apply the enhanced maximum sentence under the habitual offender statute and whether he exercised such discretion when imposing sentence. *People v. Stokes,* No. 306909, 2012 WL 6913790 (Mich. Ct. App. Nov. 20, 2012); *lv. den.* 493 Mich. 970; 829 N.W.2d 233 (2013).

Petitioner filed a post-conviction motion for relief from judgment pursuant to M.C.R. 6.500, *et. Seq.,* which was denied. *People v. Stokes,* No. 10-034413-FH (Saginaw County Circuit Court, Sept. 6, 2013).

While petitioner's application for leave to appeal was pending in the Michigan Court of Appeals, petitioner filed a petition for writ of habeas corpus, which was held in abeyance so that petitioner could finish his post-conviction proceedings in the state courts.

The Michigan appellate courts denied petitioner leave to appeal the denial of his post-conviction motion for relief from judgment. *People v. Stokes,* No. 320186 (Mich. Ct. App. June 27, 2014); *lv. den.* 497 Mich. 1010; 861 N.W.2d 895 (2015).

The Court subsequently reopened the case, amended the caption, and permitted petitioner to file an amended habeas petition.  In his original and amended habeas petitions, petitioner seeks relief on the following grounds: [1]

I. Stokes did not knowingly and intelligently waive his right to counsel before undertaking his defense.

II. The trial court sentenced Stokes while under a misconception about the legal requirements for his maximum sentence as a habitual offender.

III. Stokes was denied the effective assistance of trial counsel.

IV. The prosecutor knowingly presented false testimony.

V. Stokes's conviction of both possession of a short-barreled shotgun and felonious assault violates double jeopardy.

VI. The complaint and warrant both failed to meet the constitutional standards.

VII. Remand is necessary because the prosecutor did not call all *res gestae* witnesses.

VIII. Stokes was denied counsel at a critical stage during sentencing when the trial court invalidly waived presentation of counsel by failing to inquire

---

[1]  The Court renumbered the six claims raised by petitioner in his amended habeas petition as Claims # 8 through # 13 for judicial clarity.

-3-

whether or not Stokes knowingly, voluntarily, and intelligently wished to proceed at the subsequent hearing without counsel.

IX. Stokes had prior convictions used against him that did not meet the constitutional standard of the Sixth Amendment, and his due process rights were violated where those prior convictions were considered despite the fact that they were not properly established.

X. Stokes's Sixth Amendment rights were violated due to invalid waiver because Stokes was not competent to waive his right to counsel at trial and was given a choice of either proceeding to trial with an attorney whom he felt was unprepared or with no attorney at all.

XI. Stokes's due process rights were violated where the trial court unreasonably applied OV 8 to the scoring of his guidelines which added 15 points and allowed for a harsher sentence.

XII. Stokes's right to protection against double jeopardy was violated where he was convicted of a second felony firearm using a conviction for possession of a short barreled shotgun as the underlying felony.

XIII. Stokes's due process rights were violated where the trial court considered purported prior convictions when sentencing Stokes without ruling on the merits or allowing Stokes an opportunity to challenge them in open court.

## II.  Standard of Review

28 U.S.C. § 2254(d), as amended by The Antiterrorism and Effective Death

Penalty Act of 1996 (AEDPA), imposes the following standard of review for habeas

cases:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> > (1)      resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

       (2)     resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409. A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 410-11.

The Supreme Court has explained that "[A] federal court's collateral review of a state-court decision must be consistent with the respect due state courts in our federal system." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003). The "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,'and 'demands that state-court decisions be given the benefit of the doubt.'" *Renico v. Lett*, 559 U.S. 766, 773 (2010)((quoting *Lindh v. Murphy*, 521 U.S. 320, 333, n. 7 (1997); *Woodford v. Viscotti*, 537 U.S. 19, 24 (2002)(*per curiam*)). "[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011)(citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). Pursuant to § 2254(d), "a habeas court must determine what arguments or theories supported or...could have supported, the state court's decision; and then it must ask

whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court. *Id.* In order to obtain habeas relief in federal court, a state prisoner is required to show that the state court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington,* 562 U.S. at 103.

## I.  Discussion

### A.  Claim # 1.  Lack of a knowing and intelligent waiver of the right to counsel.

Petitioner claims that he did not knowingly and intelligently waive his right to counsel because at the time he invoked his right of self-representation, the trial court did not advise him of all of the crimes that petitioner was charged with nor did the judge warn petitioner of the enhanced penalties that he would receive if convicted as an habitual offender.

Petitioner requested to represent himself the first day of trial:

THE DEFENDANT: Well, actually, Your Honor, I don't want to keep cutting people off, but I wanted to know if I could exercise my right to represent myself.

THE COURT: Well, there are certain things I have to tell you about representing yourself.  It's a little late to be asking that.  Let me see.  You understand the charges against you, Mr. Stokes?

THE DEFENDANT: Yes, sir.

THE COURT: You also understand that in this particular case, you have two Counts of possession of a firearm during the commission of felony, which are mandatory 24-month sentences?

THE DEFENDANT: I understand that, sir.

THE COURT: You also understand that you're charged with two Counts of felonious assault, which are four-year consecutive sentences to the mandatory felony firearm charges?

THE DEFENDANT: I understand that, sir.

THE COURT: You understand, also, that there are several risks involved in representing yourself.  You could open the door for testimony that the prosecutor can use against you.  You can miss questioning that could be important to your defense.  There are certain risks involved in representing yourself.  Because you're not trained in the law, that could create problems for you; do you understand that?

THE DEFENDANT: Well, I understand at this juncture, I currently got a lot of problems right now, so –

THE COURT: But do you understand what I'm telling you about representing yourself? That's -- that's pretty risky.

THE DEFENDANT: Yeah.  I mean, I don't feel as though I could do any worse, you know?

THE COURT: Okay. You know, you can self-incriminate yourself, you could open a lot of doors that you really aren't prepared to do.  Now you –

A VOICE (unidentified): Can I speak to him?

THE COURT: Yeah, you can speak to him.

(Off-the-record discussion held.)

THE DEFENDANT: I want to proceed.

THE COURT: Pardon?

THE DEFENDANT: I want to proceed.

(Off-the-record discussion held.)

THE COURT: You want to proceed [sic] what?

THE DEFENDANT: With representing myself.

THE COURT: You're going to allow Mr. Tiderington to continue to represent you?

-7-

THE DEFENDANT: No.

THE COURT: You want to represent yourself?

THE DEFENDANT: Yes.

THE COURT: Well, what I'm going to do is I'm going to have Mr. Tiderington continue to work in an advisory position with you. Okay. So you want to give your own opening statement, question the witnesses on your own, and give you own closing argument; that's what you wish to do?

THE DEFENDANT: Yes, sir.

THE COURT: Any questions, Mr. Stokes, about representing yourself? I've explained the penalties you face. I've explained the risks you take. And I also will tell you, you're going to be held to the same standards as the prosecution in terms of legal theories, the law, everything else; you understand? He objects, if it's legal, I'm going to sustain it or whatever. You're going to have to do all those things yourself; do you understand that?

THE DEFENDANT: Yes.

THE COURT: And you're prepared to represent yourself?

THE DEFENDANT: Yes.

THE COURT: Okay. You have the right to represent yourself and I'm going to have Mr. Tiderington still be present in a stand-by capacity, and we'll do it that way. So Mr. Stokes, do you intend to give an opening statement today after the prosecutor gives us?

THE DEFENDANT: Yeah, perhaps a brief one, yeah.

(Tr. 8/5/11, pp. 58-61).

A waiver of the Sixth Amendment right to counsel is valid only when it reflects "an intentional relinquishment or abandonment of a known right or privilege." *Patterson v. Illinois*, 487 U.S. 285, 292 (1988)(quoting *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938)). A defendant's waiver of his right to counsel must "be knowing, voluntary, and intelligent." *Iowa v. Tovar*, 541 U.S. 77, 88 (2004). The waiver must be "done with

-8-

sufficient awareness of the relevant circumstances." *Id.* at 81 (internal quotation marks omitted).  It is the criminal defendant's burden to prove that he or she "did not competently and intelligently waive" his or her right to the assistance of counsel. *Id.* at 92.

Before a criminal defendant waives his or her right to counsel, he or she "should be made aware of the dangers and disadvantages of self-representation," so that the record establishes that the defendant knows what he or she "'is doing and his choice is made with eyes open.'" *Faretta v. California*, 422 U.S. 806, 835 (1975)(quoting *Adams v. United States ex rel. McCann*, 317 U.S. 269, 279 (1942)).  The Supreme Court, however, has not "prescribed any formula or script to be read to a defendant who states that he elects to proceed without counsel." *Tovar*, 541 U.S. at 88.  The information that a criminal defendant must have in order to make an intelligent election "will depend on a range of case-specific factors, including the defendant's education or sophistication, the complex or easily grasped nature of the charge, and the stage of the proceeding." *Id.* The failure of a district court in a federal criminal case to give a particular prophylactic warning and conduct a particular inquiry in determining whether a defendant should be permitted to waive his or her right to counsel does not in and of itself require reversal of a conviction. *See U.S. v. McDowell*, 814 F. 2d 245, 248-49 (6th Cir. 1987).  There is thus no clearly established federal law, as determined by the Supreme Court, which requires any specific colloquy to determine whether a defendant's waiver of counsel was made with "eyes open." *Mack v. Holt*, 62 Fed. Appx. 577, 580 (6th Cir. 2003); *See also Sullivan v. Pitcher*, 82 Fed. Appx. 162, 165 (6th Cir. 2003)(a formal inquiry into a defendant's desire to proceed pro se "is not a sine qua non of constitutional waiver").

In the present case, the judge adequately warned petitioner about the dangers of self-representation prior to accepting petitioner's waiver of the right to counsel. The judge warned petitioner that because he was not trained in the law he could open the door to damaging testimony or could miss asking questions that would help his defense. The judge warned petitioner that he could incriminate himself. The judge advised petitioner that he would be held to the same legal standards as the prosecutor. The judge explained to petitioner that he would be making his own opening statement, would be questioning the witnesses, and make his own closing argument. The judge warned petitioner that self-representation was "pretty risky." The judge's comments sufficiently warned petitioner of the dangers of self-representation.

Petitioner's primary claim is that his waiver was invalid because he was never informed by the judge that he was charged with felon in posssession of a firearm or possession of a short barreled shotgun, nor was he warned of the penalties for for the sentence enhancements that he faced as a third felony habitual offender.

In *Von Moltke v. Gillies*, 332 U.S. 708, 724 (1948), a plurality of four Supreme Court justices suggested that a trial judge before accepting a waiver of the right to counsel from a defendant should make a "penetrating and comprehensive examination of all the circumstances" surrounding the waiver of counsel, investigating the defendant's apprehension of the nature of the charges, the statutory offenses, the range of allowable punishments, possible defenses, and all other facts "essential to a broad understanding of the whole matter." Although the Sixth Circuit has approvingly cited *Von Moltke' s* guidelines, *See Fowler v. Collins*, 253 F.3d 244, 249 (6th Cir. 2001), no Supreme Court majority in any case has adopted these as constitutional requirements.

-10-

*See Beatty v. Caruso*, 64 Fed. Appx. 945, 950, n. 5 (6th Cir. 2003). As mentioned above, the failure of a district court in a federal criminal case to give a particular prophylactic warning and to conduct a specific inquiry before accepting a waiver of counsel does not in and of itself require reversal of a conviction. *McDowell*, 814 F. 2d at 248-49. In addition, the Supreme Court has yet to define the phrase "range of allowable punishments." *Akins v. Easterling*, 648 F. 3d 380, 399 (6th Cir. 2011). Because there is no clearly established law that requires a court to specifically advise petitioner of the penalties for the charged crimes before obtaining a waiver of counsel, the trial judge's failure to warn petitioner of the two firearms charges and the penalties he faced if he was convicted of being a third felony habitual offender would not entitle him to relief.

Petitioner is not entitled to habeas relief on his claim for several additional reasons. First, petitioner is not entitled to relief has made no showing that he was unaware of the firearms charges or the possible sentence enhancements if he was convicted of being a third felony habitual offender before he waived his right to counsel. *Akins*, 648 F. 3d at 399; *See Tovar*, 541 U.S. at 92 ("[W]e note that [the defendant] has never claimed that he did not fully understand the charge or the range of punishment for the crime prior to pleading guilty."). The judge read the six charges against petitioner from the felony information in petitioner's presence during *voir dire* before petitioner asked to represent himself. (Tr. 8/5/11, pp. 19-21). Earlier, at petitioner's May 17, 2010, arraignment on the warrant in district court, the court explained that petitioner was charged with felon in possession, which carried a maximum penalty of five years' imprisonment, a five thousand dollar fine, or both. (Tr. 5/17/10, p. 4). At petitioner's July 12, 2010, arraignment on the information in the circuit court, defense counsel

acknowledged receipt of and waived a formal reading of the felony information, which was amended on that date to include the charge of possession of a short barreled shotgun and the possible penalties related to petitioner's habitual offender status. (Tr. 7/12/10, p. 3). At the time that petitioner waived his right to counsel, petitioner informed the judge that he was aware of the charges against him. (Tr/ 8/5/11, p. 58). Petitioner has failed to show that he was unaware of the all of the charges, including the habitual offender charge, and the possible penalties. A specific warning on the record of the dangers and disadvantages of self-representation is not an absolute necessity in every case if the record shows that the defendant had the requisite knowledge from other sources. See *United States v. McDowell*, 814 F. 2d at 248.

Secondly, petitioner has not shown that he would not have waived his right to counsel but for his alleged lack of knowledge about the two firearms offenses or the possible sentence enhancements for being an habitual offender. A habeas petitioner's mere speculation that he might not have waived his right to counsel is insufficient to meet the burden of showing that his or her waiver of counsel was not knowing and voluntary. *Akins*, 648 F. 3d at 399.

Finally, to the extent that the petitioner is claiming that the trial court violated the provisions of Mich.Ct.R. 6.005(D), he would not be entitled to habeas relief.  It is well-established that "federal habeas corpus relief does not lie for errors of state law." *Estelle v. McGuire*, 502 U.S. 62, 67 (1991)(*quoting Lewis v. Jeffers*, 497 U.S. 764, 780 (1990)).  Petitioner's claim that the trial court violated the provisions of Mich.Ct.R. 6.005(D) is non-cognizable on habeas review. *See Cage v. Rapelje,* No. 08–13104, 2011 WL 3518163, p. 7 (E.D.Mich. August 12, 2011).  Petitioner is not entitled to habeas relief on his first claim.

**B.  Claim # 2.  The habitual offender sentencing claim.**

Petitioner next alleges that the trial judge erred in failing to recognize that he had the discretion under Michigan law to refrain from applying the habitual offender statute to increase his maximum sentence by two times the maximum sentences for his underlying offenses. [2]

Petitioner's claim involving the application of Michigan's habitual offender laws is non-cognizable on habeas review, because it involves an application of state law. *See Rodriguez v. Jones,* 625 F. Supp. 2d 552, 569 (E.D. Mich. 2009); *Grays v. Lafler*, 618 F. Supp. 2d 736, 751 (W.D. Mich. 2008).  Moreover, the Michigan Court of Appeals remanded the matter to the trial court for the judge to indicate whether he knew he had the discretion to sentence petitioner to less than the maximum sentence under the habitual offender sentencing enhancement.  On remand, the judge indicated that he

---

[2]  The charge of third felony habitual offender allows a judge to double the maximum sentence on the underlying charge. *See People v. Edgett,* 220 Mich. App. 686, 688, 560 N.W.2d 360 (1996)(citing M.C.L.A. 769.11).

was aware that he had the discretion to impose a maximum sentence less than double the maximum for the underlying offenses but chose to sentence petitioner to the maximum sentence under the third habitual offender statute.  Petitioner is not entitled to relief on his second claim.

### C.  Claim # 3.  The ineffective assistance of trial counsel claim.

Petitioner claims that he was denied the effective assistance of trial counsel.

Petitioner represented himself at trial.  A criminal defendant who "has waived his right to counsel ... cannot complain about the quality of his own defense by arguing that it amounted to ineffective assistance of counsel." *United States v. Smith*, 907 F.2d 42, 45 (6th Cir.1990); *see also Gall v. Parker*, 231 F.3d 265, 320 (6th Cir. 2000) (holding that petitioner had no ineffective assistance claim where he chose to represent himself), *overruled on other grounds by Bowling v. Parker*, 344 F.3d 487, 501 n. 3 (6th Cir. 2003). Petitioner is not entitled to relief on his third claim.

### D.  Claim # 4.  The perjury claim.

Petitioner contends that the prosecutor presented perjured testimony.  Petitioner first points to inconsistencies between Ms. Vargas' preliminary examination testimony, in which she testified that she did not see who fired the shotgun, and her trial testimony, in which she indicated that she saw petitioner fire the weapon.  Petitioner also points to inconsistencies between the testimony of Ms. Vargas and Officer Krzyminski concerning the date that the police recovered the shotgun from Ms. Vargas' residence.

The deliberate deception of a court and jurors by the presentation of known and false evidence is incompatible with the rudimentary demands of justice. *Giglio v. United States*, 405 U.S. 150, 153 (1972).  There is also a denial of due process when the

-14-

prosecutor allows false evidence or testimony to go uncorrected. *Napue v. Illinois*, 360 U.S. 264, 269 (1959)(internal citations omitted).  To prevail on a claim that a conviction was obtained by evidence that the government knew or should have known to be false, a defendant must show that the statements were actually false, that the statements were material, and that the prosecutor knew they were false. *Coe v. Bell*, 161 F. 3d 320, 343 (6th Cir. 1998).  However, a habeas petitioner must show that a witness' statement was "indisputably false," rather than misleading, to establish a claim of prosecutorial misconduct or a denial of due process based on the knowing use of false or perjured testimony. *Byrd v. Collins*, 209 F. 3d 486, 517-18 (6th Cir. 2000).  Mere inconsistencies in a witness' testimony do not establish the knowing use of false testimony by the prosecutor. *Coe*, 161 F. 3d at 343.  Additionally, the fact that a witness contradicts himself or herself or changes his or her story also does not establish perjury either. *Malcum v. Burt,* 276 F. Supp. 2d 664, 684 (E.D. Mich. 2003).

Petitioner has presented no evidence that Ms. Vargas or Officer Krzyminski testified falsely, only that there were inconsistencies in their testimony.  Conclusory allegations of perjury in a habeas corpus petition must be corroborated by some factual evidence. *Barnett v. United States*, 439 F.2d 801, 802 (6th Cir.1971).  Petitioner's perjury claim is conclusory and unsupported. More importantly, assuming that Ms. Vargas testified falsely about seeing petitioner fire the weapon or Ms. Vargas and/or Officer Krzyminski testified falsely about the date that the weapon was recovered, petitioner is still not entitled to habeas relief on his perjury claim, because he has failed to show that the prosecutor knew that the witnesses testified falsely on these matters. *See Rosencrantz v. Lafler,* 568 F. 3d 577, 587 (6th Cir. 2009).

-15-

**E.  Claim # 5.  The double jeopardy claim.**

Petitioner claims that his convictions for felonious assault and possession of a short barreled shotgun violate the Double Jeopardy Clause.

The Michigan Court of Appeals rejected petitioner's claim, finding that the elements for each offense require proof of a fact that the other does not. *People v. Stokes*, 2012 WL 6913790, at *4 (internal quotation omitted).

The Double Jeopardy Clause serves the function of preventing both successive punishments and successive prosecutions. *United States v. Ursery*, 518 U.S. 267, 273 (1996).  The protection against multiple punishments prohibits the government from "punishing twice or attempting a second time to punish criminally for the same offense." *Witte v. United States*, 515 U.S. 389, 396 (1995)(quoting *Helvering v. Mitchell*, 303 U.S. 391, 399 (1938)).  Although the Double Jeopardy Clause protects a defendant against cumulative punishments for convictions on the same offense, the clause does not prohibit the state from prosecuting a defendant for such multiple offenses in a single prosecution. *See Ohio v. Johnson,* 467 U.S. 493, 500 (1984).  Moreover, whether punishments are multiple, so as to violate the Double Jeopardy Clause, is essentially a question of legislative intent. *Id.* at 499.

When multiple convictions are secured at a single trial, the test for determining whether two offenses are sufficiently distinguishable to permit the imposition of cumulative punishment is that set forth in *Blockburger v. United States*, 284 U.S. 299, 304 (1932). *Brown v. Ohio*, 432 U.S. 161, 166 (1977).  As the Supreme Court explained that test in *Brown*:

"The applicable rule is that where the same act or transaction constitutes a

-16-

violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of an additional fact which the other does not····." This test emphasizes the elements of the two crimes.  "If each requires proof of a fact that the other does not, the *Blockburger* test is satisfied, notwithstanding a substantial overlap in the proof offered to establish the crimes····."

*Id.* at 166 (quoting *Iannelli v. United States*, 420 U.S. 770, 785 n. 17 (1975).

"The Court focuses on the statutory elements of the two crimes with which a defendant has been charged, not on the proof that is offered or relied upon to secure a conviction.... If each [offense] requires proof of a fact that the other does not, the *Blockburger* test is satisfied, notwithstanding a substantial overlap in the proof offered to establish the crimes." *United States v. Barrett*, 933 F. 2d 355, 360-61 (6th Cir. 1991)(internal citations and quotes omitted).  Thus, the Double Jeopardy Clause is not violated merely because the same evidence is used to establish more than one statutory violation. *See United States v. Dixon*, 509 U.S. 688, 696 (1993).

Under Michigan law, the elements of felonious assault or assault with a dangerous weapon are: (1) an assault, (2) with a dangerous weapon, and (3) with the intent to injure or place the victim in reasonable apprehension of an immediate battery. *See Gardner v. Kapture,,* 261 F. Supp. 2d 793, 804 (E.D. Mich. 2003)*(citing . People v. Lawton,* 196 Mich.App. 341, 349, 492 N.W.2d 810 (1992)).  M.C.L.A. 750.224b(1) provides that "[a] person shall not manufacture, sell, offer for sale, or possess a short-barreled shotgun or short-barreled rifle."  Petitioner's convictions for both offenses did not violate the Double Jeopardy Clause because each offense contains an element that the other does not.

Moreover, in deciding a habeas petitioner's double jeopardy claim, a federal

-17-

habeas court is bound by a state appellate court's interpretation of different state statutes to permit a defendant who is convicted of multiple offenses to be punished for both offenses. *See Palmer v. Haviland,* 273 Fed. Appx. 480, 486-87 (6th Cir. 2008). Once a state court has determined that the state legislature intended cumulative punishments for separate offenses, a federal habeas court must defer to that determination. *See Banner v. Davis,* 886 F. 2d 777, 780 (6th Cir. 1989). The Michigan Court of Appeals essentially determined that the Michigan Legislature intended cumulative punishment for the offenses of felonious assault and possession of a short barreled shotgun. This Court sitting on federal habeas review is bound by that determination. *Banner,* 886 F. 2d at 780. Because this determination is binding in federal habeas corpus, petitioner's claim that his convictions for both felonious assault and possession of a short barreled shotgun violate the Double Jeopardy Clause must be rejected. *See Rodgers v. Bock,* 49 Fed. Appx. 596, 597 (6th Cir. 2002).

**F. Claim # 6. The invalid complaint and warrant claim.**

Petitioner contends that the initial complaint was invalid because it listed the weapon used during the assault as either a handgun or a shotgun. Petitioner claims that the examining magistrate erred in binding petitioner over to trial on this complaint. The information was amended before trial to indicate that the weapon used in the assault was a shotgun.

A state criminal defendant has a due process right to be informed of the nature of the accusations against him or her. *Lucas v. O'Dea,* 179 F. 3d 412, 417 (6th Cir. 1999). Notice and opportunity to defend against criminal charges as guaranteed by the Sixth Amendment to the United States Constitution are an integral part of the due process

protected by the Fourteenth Amendment and therefore apply to state prosecutions. *Cole v. Arkansas,* 333 U.S. 196, 201 (1948); *In Re Oliver,* 333 U.S. 257, 273 (1948).  "The due process clause of the Fourteenth Amendment mandates that whatever charging method the state employs must give the criminal defendant fair notice of the charges against him to permit adequate preparation of his defense." *Olsen v. McFaul,* 843 F. 2d 918, 930 (6th Cir. 1988).

A complaint or indictment need not be perfect under state law so long as it adequately informs the petitioner of the crime in sufficient detail so as to enable him or her to prepare a defense.  Therefore, an indictment "which fairly but imperfectly informs the accused of the offense for which he is to be tried does not give rise to a constitutional issue cognizable in habeas proceedings." *Mira v. Marshall*, 806 F. 2d 636, 639 (6th Cir. 1986).  An alleged defect in a state court information or indictment is therefore not constitutional error unless a habeas petitioner can establish that: (1) he did not receive adequate notice of the charges; and (2) he was therefore denied the opportunity to defend himself against the charges. See *Roe v. Baker,* 316 F.3d 557, 570 (6th Cir. 2002).  In addition, "When reviewing amendments to state charging documents in habeas corpus proceedings, the federal courts focus on the questions whether the defendant was surprised by the amendment or otherwise prejudiced in his ability to defend himself at trial." *Rhea v. Jones*, 622 F. Supp. 2d 562, 583 (W.D. Mich. 2008)(internal citations omitted).

Petitioner is unable to show that he was surprised by the amendment of the information or that he was prejudiced in his ability to defend himself at trial.  An accused's constitutional right to notice of the criminal charge or charges brought against

-19-

him or her can be satisfied by other means, such as a preliminary examination. *See Stevenson v. Scutt*, 531 Fed. Appx. 576, 580 (6th Cir. 2013)(noting that victim's testimony from the preliminary examination provided petitioner with notice of the time frame of the assaults). The victim's testimony from the preliminary examination clearly put petitioner on notice as to the nature of the charges, including the allegation that the weapon used during the assault was a shotgun.

Moreover, petitioner was convicted by a jury after a trial. The Ninth Circuit has observed that neither *Cole v. Arkansas, supra,* nor *In re Oliver, supra,* "foreclose the premise that constitutionally adequate notice may come from evidence presented at trial." *See Troches v. Terhune,* 74 Fed. Appx. 736, 737 (9th Cir. 2003). The victim's testimony at trial was sufficient to afford petitioner adequate notice of the charges against him, including the allegation that a shotgun was used. *See Bruce v. Welsh*, 572 Fed. Appx. 325, 331 (6th Cir. 2014).

To the extent that petitioner claims that he was improperly bound over for trial, he has failed to state a claim upon which habeas relief can be granted. A prior judicial hearing is not a prerequisite to prosecution by information. *Gerstein v. Pugh*, 420 U.S. 103, 119 (1975). There is no federal constitutional right to a preliminary examination. *United States v. Mulligan*, 520 F. 2d 1327, 1329 (6th Cir. 1975); *Dillard v. Bomar*, 342 F. 2d 789, 790 (6th Cir. 1965). Petitioner's claim that he was improperly bound over for trial thus raises only a matter of state law and procedure that cannot form a basis for federal habeas relief. *See Tegeler v. Renico,* 253 Fed. Appx. 521, 525-26 (6th Cir. 2007). Petitioner is not entitled to relief on his sixth claim.

**G. Claim # 7. The *res gestae* witness claim.**

-20-

Petitioner next claims that his rights were violated because the prosecutor failed to call Don Spicer to testify as a *res gestae* witness.

Federal law does not require the production of *res gestae* witnesses. *See Johnson v. Hofbauer,* 159 F. Supp. 2d 582, 601 (E.D. Mich. 2001). Michigan law's requirement that the prosecutors produce *res gestae* witnesses is simply a matter of state law whose enforcement is beyond the scope of federal habeas review. *See Collier v. Lafler,* 419 Fed. Appx. 555, 559 (6th Cir. 2011). "[U]nder federal law, there is no obligation on the part of the prosecutor to call any particular witness unless the government has reason to believe that the testimony would exculpate the petitioner." *Atkins v. Foltz*, 856 F. 2d 192 (Table), 1988 WL 87710, * 2 ( 6th Cir. Aug. 24, 1988)(citing to *United States v. Bryant*, 461 F. 2d 912, 916 (6th Cir. 1972)). Thus, whether a prosecutor exercised due diligence in attempting to locate a *res gestae* witness is outside the scope of federal habeas review. *Collier,* 419 Fed. Appx. at 559.

Petitioner has offered no evidence, other than speculation, that Mr. Spicer would have provided exculpatory evidence. Petitioner is not entitled to relief on his claim.

**H. Claims # 8 through # 13.  Petitioner's post-conviction claims are procedurally defaulted.**

Respondent contends that petitioner's remaining claims are procedurally defaulted because they were raised for the first time in petitioner's post-conviction motion for relief from judgment and petitioner failed to show cause for failing to raise these issues in his appeal of right, as well as prejudice, as required by M.C.R. 6.508(D)(3).

M.C.R. 6.508(D)(3) provides that a court may not grant relief to a defendant if the motion for relief from judgment alleges grounds for relief which could have been raised on direct appeal, absent a showing of good cause for the failure to raise such grounds previously and actual prejudice resulting therefrom.

When the state courts clearly and expressly rely on a valid state procedural bar, federal habeas review is also barred unless petitioner can demonstrate "cause" for the default and actual prejudice as a result of the alleged constitutional violation, or can demonstrate that failure to consider the claim will result in a "fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750-51 (1991).  If a habeas petitioner fails to show cause for his procedural default, it is unnecessary for the court to reach the prejudice issue. *Smith v. Murray*, 477 U.S. 527, 533 (1986).  However, in an extraordinary case, where a constitutional error has probably resulted in the conviction of one who is actually innocent, a federal court may consider the constitutional claims presented even in the absence of a showing of cause for procedural default. *Murray v. Carrier*, 477 U.S. 478, 479-80 (1986).  To be credible, such a claim of innocence requires a petitioner to support the allegations of constitutional error with new reliable

-22-

evidence that was not presented at trial. *Schlup v. Delo*, 513 U.S. 298, 324 (1995).

The Supreme Court noted that "a procedural default does not bar consideration of a federal claim on either direct or habeas review unless the last state court rendering a judgment in the case 'clearly and expressly' states that its judgment rests on the procedural bar." *Harris v. Reed*, 489 U.S. 255, 263 (1989).  If the last state court judgment contains no reasoning, but simply affirms the conviction in a standard order, the federal habeas court must look to the last reasoned state court judgment rejecting the federal claim and apply a presumption that later unexplained orders upholding the judgment or rejecting the same claim rested upon the same ground. *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991).

The Michigan Court of Appeals and the Michigan Supreme Court rejected petitioner's post-conviction appeal on the ground that the defendant failed "to meet the burden of establishing entitlement to relief under MCR 6.508(D)."  These orders, however, did not refer to subsection (D)(3) nor did they mention  petitioner's failure to raise these claims on his direct appeal as their rationale for rejecting his post-conviction claims.  Because the form orders in this case citing Rule 6.508(D) are ambiguous as to whether they refer to procedural default or a denial of post-conviction relief on the merits, the orders are unexplained. *See Guilmette v. Howes*, 624 F. 3d 286, 291 (6th Cir. 2010).  This Court must "therefore look to the last reasoned state court opinion to determine the basis for the state court's rejection" of petitioner's claims. *Id.*

The trial court judge, in denying petitioner's post-conviction motion, cited to M.C.R. 6.508(D)(3) and ruled that petitioner failed to establish good cause for not raising his claims on direct appeal. *People v. Stokes,* No. 10-034413-FH, * 3-4

-23-

(Saginaw County Circuit Court, Sept. 6, 2013).  Because the trial court judge clearly denied petitioner post-conviction relief based on the procedural grounds stated in Mich.Ct.R. 6.508(D)(3), petitioner's eighth through thirteenth claims are procedurally defaulted pursuant to Mich.Ct.R. 6.508(D)(3). *See Ivory v. Jackson,* 509 F. 3d 284, 292-93 (6th Cir. 2007); *See also Howard v. Bouchard,* 405 F. 3d 459, 477 (6th Cir. 2005).

Petitioner has not alleged or demonstrated any cause for his procedural default. It is unnecessary to reach the prejudice issue regarding his defaulted claims. *Smith*, 477 U.S. at 533; *See also Harris v. Stegall,* 157 F. Supp. 2d 743, 750 (E.D. Mich. 2001). Additionally, petitioner has not presented any new reliable evidence to support any assertion of innocence which would allow this Court to consider petitioner's defaulted claims as grounds for a writ of habeas corpus in spite of the procedural default. Because petitioner has not presented any new reliable evidence that he is innocent of these crimes, a miscarriage of justice will not occur if the Court declined to review petitioner's procedurally defaulted claims on the merits. *Harris v. Stegall,* 157 F. Supp. 2d at 751.

## IV.  Conclusion

The Court will deny the petition for writ of habeas corpus.  The Court will also deny a certificate of appealability to petitioner.  In order to obtain a certificate of appealability, a prisoner must make a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2).  To demonstrate this denial, the applicant is required to show that reasonable jurists could debate whether, or agree that, the petition should have been resolved in a different manner, or that the issues presented were adequate to deserve encouragement to proceed further. *Slack v. McDaniel*, 529 U.S.

-24-

473, 483-84 (2000).  When a district court rejects a habeas petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims to be debatable or wrong. *Id.* at 484.  Likewise, when a district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claims, a certificate of appealability should issue, and an appeal of the district court's order may be taken, if the petitioner shows that jurists of reason would find it debatable whether the petitioner states a valid claim of the denial of a constitutional right, and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling. *Id.* at 484. "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."  Rules Governing § 2254 Cases, Rule 11(a), 28 U.S.C. foll. § 2254.

For the reasons stated in this opinion, the Court will deny petitioner a certificate of appealability because he has failed to make a substantial showing of the denial of a federal constitutional right. *Myers v. Straub,* 159 F. Supp. 2d 621, 629 (E.D. Mich. 2001).  The Court will also deny petitioner leave to appeal *in forma pauperis,* because the appeal would be frivolous. *Id.*

## V. ORDER

Based upon the foregoing, IT IS ORDERED that the Petition for a Writ of Habeas Corpus is **DISMISSED WITH PREJUDICE.**

IT IS FURTHER ORDERED That a Certificate of Appealability is **DENIED.**

IT IS FURTHER ORDERED that Petitioner will be **DENIED** leave to appeal *in forma*

*pauperis.*

Dated:  March 25, 2016

s/George Caram Steeh
GEORGE CARAM STEEH
UNITED STATES DISTRICT JUDGE

---

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on
March 25, 2016, by electronic and/or ordinary mail and also on
Cary Stokes #257050, Central Michigan Correctional Facility,
320 N. Hubbard, St. Louis, MI 48880.

s/Barbara Radke
Deputy Clerk

---